William WINTERS, Plaintiff,

v.

State of FLORIDA, DEPARTMENT OF CORRECTIONS, Defendant.

No. 8:00–CV–1567–T–EAJ.

United States District Court, M.D. Florida, Tampa Division.

Sept. 13, 2001.

Wolfgang M. Florin, Chrisptoher D. Gray, Angela E. Outten, Florin, Roebig & Walker, P.A., Palm Harbor, FL, for William Winters.

John William Robinson, IV, Conal Doyle, Fowler White Boggs Banker, P.A., Tampa, FL, Scott Kenneth Hewitt, Mandelbaum & Fitzsimmons, P.A., Tampa, FL, for Florida Dept. of Corrections.

## ORDER

JENKINS, United States Magistrate Judge.

THIS CAUSE comes on for consideration of **Defendant Florida Department** of Corrections' Motion for Final Summary Judgment on Plaintiff's Sexual Harassment Claim (Dkt.20), plaintiff William Winters' response in opposition (Dkt.25), and the parties' supporting documents.[1] The parties have consented to proceed before the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Dkt.26.)

Plaintiff brings this same-sex sexual harassment action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1)—2000e–3(a), (hereinafter "Title VII") against his current employer, the Florida Department of Corrections. Plaintiff alleges that his former supervisor, Dick Lovett, created a hostile work environment by sexually harassing him and the Department of Corrections retaliated against him when he reported the alleged harassment to management.

Arguing that Lovett's actions toward plaintiff were not based on plaintiff's gender, defendant contends that plaintiff's sexual harassment claim should fail. Additionally, defendant alleges that Lovett's actions toward plaintiff were not sufficiently severe or pervasive such that they created a hostile work environment. (Dkt. 20 at 6, 9.) Lastly, defendant argues that, as a state agency, it is exempt from punitive damages under Title VII.[2]

1. The supporting materials include: 1) public information from the Florida Department of Corrections' website (Dkt.21); 2) excerpts from plaintiff's deposition (Dkt.21); 3) excerpts from the deposition of Michael Doolin (Dkt.21); 4) Department of Corrections investigation record # 98–31056, pertaining to defendant and Edward Sanford (Dkt.25); 5) a Department of Corrections report regarding prior investigations of defendant (Dkt.25); 6) Department of Corrections investigation record # 98–31569, pertaining to defendant and Julio Rivera (Dkt.25); 7) Michael Doolin's affidavit in connection with investigation # 98–31569 (Dkt.25); 8) Michael Doolin's affidavit in connection with investigation # 98–31056 (Dkt.25); and 9) a Department of Corrections Corrective Action/Disposition Report regarding defendant's dismissal (Dkt.25).

2. Conceding that he is not entitled to punitive damages against the state of Florida, plaintiff withdrew his claim for punitive damages. (Dkt. 25 at 14, n. 3.) Accordingly, this court will grant defendant's motion to strike plaintiff's claim for punitive damages.

### Summary Judgment Standard

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir.1995). At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In reviewing a grant of summary judgment, the court views all evidence in the light most favorable to the party opposing the motion. *Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996).

### Background Facts

In October of 1997, plaintiff began temporarily performing the duties of food service director at Hernando Correctional Institution. (Pl.'s Dep. at 34.) In June of 1998, Dick Lovett permanently filled the position of food service director. (Pl.'s Dep. at 34.) As a result, plaintiff worked as a member of the kitchen staff under Lovett's authority. (Pl.'s Dep. at 34.)

An inmate and member of the kitchen staff, Edward Sanford, claimed that Lovett patted him on his buttocks and attempted to grab him in a sexual manner. (Dkt. 25, Ex. 2, Sanford Investigation Report.) The Department of Corrections eventually exonerated Lovett of Sanford's accusation. (Pl.'s Dep. at 43.) Shortly thereafter, plaintiff claims, Lovett began touching him in an inappropriate and sexual manner. (Pl.'s Dep. at 55.) Plaintiff also claims that Lovett made unwanted sexual comments over an unspecified time period. (Pl.'s Dep. at 56–58.)

Most of Lovett's inappropriate touching occurred in a busy kitchen with several inmates around, while plaintiff stood in the food line watching the inmates prepare food. (Pl.'s Dep. at 43, 47, 48, 52, 55.) He described this touching as "rubb[ing] his finger across my butt," and stated that it occurred at least six or seven times from November of 1998 until March of 1999. (Pl.'s Dep. at 43, 55.) Lovett "would do like you would do with a girl. Walk by you and take his finger with the back of his finger and rub it across your butt ... like real low on your butt." (Pl.'s Dep. at 47.)

Plaintiff was concerned that he would lose respect in the eyes of the inmates he supervised because he was "working with a bunch of guys where homosexuality is not cool." (Pl.'s Dep. at 46.)

"[I]n prison, you don't touch people on the butt. Period.... [Y]ou go banging into somebody by mistake, they're liable to stab you, so you have to have respect. You have to respect them, and they have to respect you. And as a result, you're careful about your actions. You don't touch people. You don't go up and pat people on the shoulder. You don't do anything that's conducive to homosexual involvement ... [o]therwise, you discredit the other person."

(Pl.'s Dep. at 51.)

On several occasions, plaintiff asked Lovett to stop touching him inappropriately. (Pl.'s Dep. at 46.) Lovett, however, refused and stated that plaintiff would lose his job and would not be able to obtain another due to his advancing age. (Pl.'s Dep. at 46, 62, 71.) One time, Lovett told plaintiff, "[f]rom now on if I got any problems, you got to answer to this," referring to his gun. (Pl.'s Dep. at 61.)

One incident that plaintiff describes occurred in front of eight or nine inmates as plaintiff bent over to pick up the lid of a garbage can. (Pl.'s Dep. at 53–54.) Lovett walked by plaintiff and swiped him "from all the way down on the bottom all the way up like this here," apparently indicating that Lovett touched him from his genitals to his posterior. (Pl.'s Dep. at 53, 68.)

Plaintiff felt that Lovett believed he "couldn't be the boss" as long as plaintiff was working in the kitchen. (Pl.'s Dep. at 64.) Accordingly, Lovett may have touched him and made sexual comments in order to discredit him and to run him out of the kitchen. (Pl.'s Dep. at 48, 51, 56, 64.) However, plaintiff also felt that Lovett's touches and comments were sexual in nature, and that Lovett may have had homosexual tendencies. (Pl.'s Dep. at 65.)

Plaintiff witnessed defendant touching one other male officer, Michael Doolin, in his crotch area. (Pl.'s Dep. at 64–65.) Augie Macarone, also a male officer, told plaintiff that "Lovett pinched my butt all the time." (Pl.'s Dep. at 92.)

Two male inmates filed separate complaints against Lovett, claiming that he grabbed their buttocks. (Dkt. 25, Ex. 2, Sanford Investigation Report; Dkt. 25, Ex. 4, Rivera Investigation Report.)

Plaintiff heard that Lovett used to touch men when he worked at Sumter, another correctional facility within the same region as Hernando. (Pl.'s Dep. at 50.) Paul Hunt, a correctional officer at Sumter, told plaintiff that Lovett touched an inmate's buttocks, and, to retaliate, the inmate slammed a door in Lovett's face. (Pl.'s Dep. at 50.) Hunt stated that a lieutenant who witnessed the incident characterized it as "a regular thing down here. That's how he plays the game." (Pl.'s Dep. at 50.)

In addition to touching male inmates and coworkers, Lovett made inappropriate sexual comments about men and women, including inmates and staff members. (Pl.'s Dep. at 56–58) (comments about a female major, a female staff member, a male inmate, and a female sergeant). Female staff members had complained about Lovett due to his inappropriate comments. (Pl.'s Dep. at 58.)

### Analysis

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a)(1) (West 1994).

 Title VII applies not only to "terms" and "conditions" in the narrow sense, but also to " 'the entire spectrum of disparate treatment of men and women' in employment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal citation omitted). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations omitted).

 To establish a hostile-environment sexual harassment claim pursuant to Title VII, an employee must show: 1) that he or she belongs to a protected group; 2) that he or she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; 3) that the harassment was based on his or her sex; 4) that the harassment was sufficiently severe or pervasive to alter the terms and

conditions of employment and create a discriminatorily abusive working environment; and 5) a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999), *cert. denied*, 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000).[3]

██ "[N]othing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are the same sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). Thus, that plaintiff and his alleged harasser are the same gender does not proscribe plaintiff's sexual harassment claim.

██ Title VII, however, does not prohibit *all* verbal or physical workplace harassment. *Id.* at 80, 118 S.Ct. 998. Workplace harassment is not automatically discrimination because of sex "merely because the words used have sexual content or connotations." *Id.* "The critical issue ... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (*citing Harris*, 510 U.S. at 25, 114 S.Ct. 367 (Ginsberg, J., concurring)).

██ Thus, a plaintiff alleging harassment prohibited by Title VII "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discriminat[tion]* ... because of ... sex.'" *Id.* at 81, 118 S.Ct. 998 (internal citations omitted).

██ Such discrimination need not be motivated by sexual desire. *Id.* at 80, 118 S.Ct. 998. However, "[p]ersonal animosity is not the equivalent of sex discrimination.... The plaintiff cannot turn a per-

sonal feud into a sex discrimination case." *Succar v. Dade County School Board*, 229 F.3d 1343, 1345 (11th Cir.2000) (defendant harassed plaintiff not because of his gender, but because of defendant's contempt for plaintiff after their intimate relationship failed) (*citing McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986)).

According to plaintiff, Lovett may have fondled him in front of other coworkers and inmates in an attempt to discredit him. This motivation, defendant argues, is insufficient to establish discrimination because of sex.

██ The record evidence indicates, however, that Lovett fondled *only* men. While he may have been verbally abusive to both men and women, the evidence—viewed in the light most favorable to plaintiff—could lead a reasonable juror to conclude that plaintiff would not have been the object of Lovett's unsolicited, unwelcome touching and rubbing but for the fact that he is male. Consequently, a triable issue of material fact exists as to whether Lovett's actions toward plaintiff were based on plaintiff's sex.

██ Title VII forbids "only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." *Oncale*, 523 U.S. at 81, 118 S.Ct. 998. Conduct must be severe or pervasive, such that it creates an objectively hostile or abusive work environment. *Harris*, 510 U.S. at 21, 114 S.Ct. 367. *See also Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."); *Mendoza*, 195 F.3d at 1245.

---

**3.** Defendant has challenged only the third and fourth elements of plaintiff's sexual harassment claim. Accordingly, this court will not address the other elements.

■ Although there is no precise formula to help courts determine whether alleged conduct is sufficiently pervasive to alter the terms and conditions of employment, some general parameters have been articulated. "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275. *See also Vance v. Southern Bell Tel. & Tel. Co.,* 863 F.2d 1503, 1511 (11th Cir.1989) ("the law requires that the finder of fact examine not only the frequency of the incidents, but the gravity of the incidents as well"), *overruled on other grounds by Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Unwelcome words and utterances that contain sexual references do not, by themselves, create a hostile work environment. *Harris,* 510 U.S. at 21, 114 S.Ct. 367.

■ The objective severity of harassment should be determined "from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. "These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■ Additionally, this inquiry "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998.

The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.* at 81–82, 118 S.Ct. 998.

■ Likewise, the plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive to alter the terms or conditions of employment. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367; *Mendoza,* 195 F.3d at 1246.

Lovett's unwanted touching of plaintiff occurred at least six or seven times over a four to five month period. *See Harris,* 510 U.S. at 23, 114 S.Ct. 367; *Vance,* 863 F.2d at 1511. Plaintiff protested Lovett's touches and explicitly told him that he did not like this behavior and that he should stop. When he spoke with Lovett about this issue, Lovett threatened plaintiff by reminding him that he would have difficulty finding another job due to his age and that there was nothing he could do. One time, Lovett showed plaintiff his gun, suggesting that he would resort to using it to resolve any problems plaintiff may have with him.

Evaluating the veracity of the parties and their witnesses falls within the province of the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. The court must draw all inferences in favor of plaintiff at this stage of the proceedings. *Id. See also Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904–05 (11th Cir.1988).

■ Viewed in the light most favorable to plaintiff, a genuine issue of material fact arises as to whether Lovett's unwanted touching was severe, physically threatening, and humiliating, such that it interfered with plaintiff's work performance and created a hostile environment. Thus, plain-

tiff's claim of sexual harassment shall proceed to trial, subject, of course, to any challenges to the sufficiency of the evidence that may be made during trial pursuant to Rule 50 of the Federal Rules of Civil Procedure.

### Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant Florida Department of Corrections' Motion for Final Summary Judgment on Plaintiff's Sexual Harassment Claim (Dkt.20) is **DENIED** as to plaintiff's claim for hostile work environment sexual harassment, but **GRANTED** as to plaintiff's claim for punitive damages.